RECEIVED
IN LAKE CHARLES, LA.

OCT 20 2014

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| HEATHER BERNARD, | * | CIVIL ACTION NO. 2:13-cv-3284 |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | JUDGE MINALDI |
| | * | |
| EDS NOLAND EPISCOPAL DAY SCHOOL, | * | |
| | * | |
| | * | |
| Defendant. | * | MAGISTRATE JUDGE KAY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM RULING

Before the court is Bishop Noland Episcopal Day School's ("EDS") Motion for Summary Judgment [Doc. 16], to which the plaintiff, Heather Bernard ("Bernard"), has filed an Opposition [Doc. 20], to which the defendant has filed a Reply [Doc. 21]. For the following reasons, the defendant's Motion for Summary Judgment [Doc. 16] be and hereby is **GRANTED, IN PART,** and **DENIED, IN PART.**

### FACTS & PROCEDURAL HISTORY

Bernard worked at EDS for fourteen years before being terminated from her teaching position on October 24, 2012.[1] Like all teachers at EDS, Bernard was employed each year pursuant to an employment contract.[2] During the 2011-2012 academic year, Bernard was a lead teacher in the three year old program at EDS, and at the end of that year, she met with Principal Reverend Frances "Boo" Kay to discuss her goals for the upcoming year.[3] One of

---

[1] Ex. A Oral Dep. of Heather Bernard [Doc. 16-2], at 19; Pl.'s Opp. to Def.'s Mot. for Summ. J. [Doc. 20], at 5.
[2] *Id.* at 1.
[3] Pl.'s Resp. to Def.'s Uncontested Material Facts [Doc. 20-1], at 1-2.

Bernard's "major goals" was a "health goal" that included seeing a doctor about her weight loss issues.[4]

In July 2012, Bernard emailed the vice principal of EDS to inquire about sick leave, so she could receive medical attention for an eating disorder.[5] The vice principal informed Bernard that she had 16.75 sick days to begin the year, followed by one month of full pay for September, then one month of one-half pay for October, and finally, one month of one-third pay for November.[6] The FMLA was not referred to in the email discussing Bernard's leave availability, and there is a dispute about whether there were notices posted around the school informing employees of their rights under the FMLA.[7] Bernard began her leave on or around August 15, 2012, and sought treatment for her eating disorder.[8]

A few months later, Bernard received "return to work" releases and returned to work on October 8, 2012.[9] Bernard's nutritionist "cautiously agreed" to allow her to return to work and noted that the release came with "strict guidelines."[10] Similarly, Bernard's counselor provided Bernard with a release subject to three conditions: (1) continuing to receive regular treatment from all members of the team, (2) continuing to make progress with her eating disorder, and (3) continuing to have lab and blood work monitored.[11] Bernard agreed to return to work under those conditions and also agreed to have her medical providers give EDS updates on whether or not she was complying with the prerequisites for her return to work.[12]

---

[4] *Id.* at 2.
[5] Pl.'s Ex. 1 Aff. of Heather Bernard [Doc. 20-2], at 1.
[6] Pl.'s Ex. 5 Email from Amelia Yakupzack to Heather Bernard [Doc. 20-7].
[7] *Compare* Pl.'s Ex. 1 Aff. of Heather Bernard [Doc. 20-2], at 2 *with* Def.'s Supplemental Aff. [Doc. 23-1] ¶ 5.
[8] *Id.* at 2.
[9] Pl.'s Resp. to Def.'s Uncontested Material Facts [Doc. 20-1], at 4.
[10] *Id.* at 5.
[11] *Id.*
[12] *Id.*

The day after she returned to work, Bernard had an appointment with her nutritionist, who indicated that Bernard was "below expectation" in meeting the required goals for her release to work.[13]  Bernard voluntarily provided the principal with a note from her nutritionist indicating that she was not meeting expectations.[14]  Then, during an appointment with her counselor on October 19, 2012, Bernard was informed that her medical team was discontinuing her treatment because she still continued to lose weight.[15]  Bernard did not return to work after her appointment, which was on a Friday, or on the following Monday or Tuesday.[16]  EDS terminated Bernard on October 24, 2012.[17]

Bernard filed suit against EDS on December 20, 2013.[18]  In her complaint, Bernard alleges that EDS committed violations of the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"), and breached its employment contract with her.[19]  On August 19, 2014, EDS filed a motion for summary judgment on all claims.[20]

## LAW & ANALYSIS

### I.   Summary Judgment Standard

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is said to be "genuine" only where a "reasonable jury could return a verdict for the non-moving party."  *Dizer v. Dolgencorp, Inc.*, No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006)).  "Rule 56[(a)] mandates the entry of summary judgment

---

[13] *Id.* at 7.
[14] Pl.'s Resp. to Def's Uncontested Material Facts [Doc. 20-1], at 7.
[15] Pl.'s Ex. 1 Aff. of Heather Bernard [Doc. 20-2], at 1.
[16] Pl.'s Resp. to Def.'s Uncontested Material Facts [Doc. 20-1], at 8.
[17] Termination Letter [Doc. 16-2], at 100.
[18] Compl. [Doc. 1].
[19] *Id.* ¶¶ 16-21.
[20] Def.'s Mot. for Summ. J. [Doc. 16].

. . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Webber v. Christus Schumpert Health Sys.,* No. 10-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sept. 2, 2011) (citing *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir. 2004)).

In ruling upon a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at *3 n.1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (additional citation omitted)). However, the court will not, in the absence of proof, "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

## II.    Americans with Disabilities Act

Bernard asserts that EDS violated the ADA in three ways: (1) for terminating Bernard because EDS regarded her as disabled; (2) for terminating Bernard before discussing reasonable accommodation; and (3) for terminating Bernard without providing her with sufficient notice of her rights under the ADA.[21]  EDS argues that Bernard has failed to allege that she was disabled and has failed to identify any reasonable accommodation that she was denied.[22]

### A.  Termination for Perceived Disability

To establish a *prima facie* case of disparate treatment under the ADA, the plaintiff must show that: (1) she had a disability within the meaning of the ADA; (2) she was qualified and able to perform the essential functions of the job; and (3) she suffered an adverse employment action because of her disability. *Neely v. PSEG Texas, Ltd. P'ship,* 735 F.3d 242, 245 (5th Cir. 2013). The ADA defines a "disability" as "a physical or mental impairment that substantially limits one

---

[21] Compl. [Doc. 1] ¶ 16.
[22] Def.'s Mot. for Summ. J. [Doc. 16], at 1-2.

or more major life activities of [an] individual; a record of such impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102.  An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that she has been "subjected to a prohibited action because of an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12012(3)(A).[23]

One way a plaintiff may establish a case of discrimination under the ADA is through direct evidence. *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir. 1995).  "Direct evidence is evidence which, if believed, proves the fact of intentional discrimination without inference or presumption." *Portis v. First Nat. Bank of New Albany, Miss.,* 34 F.3d 325, 328-29 (5th Cir. 1994) (quoting *Brown v. East Miss. Elect. Power Ass'n,* 989 F.2d 858, 861 (5th Cir. 1993)) (internal quotation marks omitted).  "[D]irect evidence includes any statement or written document showing a discriminatory motive on its face." *Id.* at 329 (citing *Vaughn v. Edel,* 918 F.2d 517, 521 (5th Cir. 1990); and *Miles v. M.N.C. Corp.,* 750 F.2d 867, 870 (11th Cir. 1985)). When there is direct evidence of discrimination under the ADA, it is unnecessary to apply the burden-shifting framework of *McDonnell Douglas* to establish an inference of discrimination. *Rizzo v. Children's World Learning Centers, Inc.,* 84 F.3d 758, 762 (5th Cir. 1996) (internal citations omitted).

Bernard has presented direct evidence of a disability and an adverse employment action on the basis of that disability.  Her termination letter explains that it was the view of Reverend Kay that Bernard was no longer able to "model good health" nor possessed the requisite "energy and

---

[23] The ADA was amended to include the "whether or not" language in 2008, and the amendment was designed to make it easier to "obtain protection under the ADA."  29 C.F.R. § 1630.1(c)(4).

strength."[24]  The termination letter also iterates that Reverend Kay did not believe that Bernard was capable of performing "in accordance with the Characteristics of Professional Excellence expected of all EDS faculty."[25]

Under the 2008 amendments to the ADA, Bernard only needs to allege that she was subjected to a prohibited action because of an actual or perceived mental or physical impairment. Bernard was told that she was terminated based on Reverend Kay's perceptions about Bernard's abilities to physically perform and to model good health.  Viewed in the light most favorable to Bernard, this establishes that Reverend Kay believed that Bernard had a physiological impairment that prevented Bernard from performing her job and terminated Bernard on that basis.  This is sufficient to establish a *prima facie* case of discrimination on the basis of perceived disability.

However, Bernard also needs to establish that she is a qualified individual under the ADA.  A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position such individual holds or desires."  42 U.S.C. § 12111(8).  To avoid summary judgment, Bernard must show that (1) she could perform the essential functions of the job or (2) that reasonable accommodation would have enabled her to perform the essential functions of her job.  *Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1093 (5th Cir. 1996).  "An essential element of any job is an ability to appear for work . . . ." *Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 759 (5th Cir. 1996) (citations omitted). Additionally, reasonable accommodation does not include an employer waiting indefinitely for the employee's medical conditions to be corrected.  *Id.* at 760.

---

[24] Termination Letter [Doc. 16-2], at 98.
[25] *Id.*

Bernard has not shown that she could perform the essential functions of her job at the time of her termination. Bernard's return to work was subject to three conditions: (1) receive regular treatment by her team, (2) make progress with her eating disorder, and (3) monitor her lab work and blood work.[26] Bernard also acknowledged that her medical team dismissed her on October 19th and that it was her understanding that she was no longer allowed to go back to work.[27] She agreed that, prior to receiving her termination letter, she did not know when she was going to be permitted to return to work.[28]

However, Bernard stated that when she returned to work that she did not consider herself to be disabled and that there were no functions of her job that she felt she could not complete.[29] She explained that she felt that she fulfilled all of her duties in the classroom effectively and without limitation or difficulty.[30] While Bernard asserts that she felt well enough to work, it is uncontroverted that she was not meeting the conditions placed on her return to work, namely that she continue to receive treatment from her medical team.[31] Because Bernard did not have the ability to appear for work based on the revocation of her return-to-work release, she has not been able to show that she could perform all essential functions of her job.

Bernard has also failed to meet her burden of showing that she would have been able to perform the essential duties of her job with reasonable accommodation. Assuming that Bernard had available FMLA leave remaining to her at the time of her discharge does not change the conclusion that Bernard was not a "qualified individual" at the time of her discharge. FMLA

---

[26] Pl.'s Ex. 3 Dep. of Heather Bernard [Doc. 20-4], at 36.
[27] *Id.* at 51.
[28] *Id.* at 53.
[29] Pl.'s Ex. 3 Dep. of Heather Bernard [Doc. 20-4], at 37.
[30] *Id.* at 38.
[31] *See* Pl.'s Resp. to Def.'s Uncontested Material Facts [Doc. 20-1], at 5-8. Although the exact reason that Bernad's medical team discontinued treatment is contested, the fact that she was not receiving treatment from her medical team or from any other physician at the time of her discharge violates the first condition of her release to return to work. *Id.*

leave is not a reasonable accommodation under the ADA; it is a right enforceable under a separate statutory provision. *Trevino v. United Parcel Serv.*, No. 3:08-CV-0889-B, 2009 WL 3424049 *12 (N.D. Tex. Oct. 23, 2009) (citing *Navarro v. Pfizer Corp.*, 261 F.3d 90, 101 (1st Cir. 2001); and *Vice v. Blue Cross & Blue Shield of Oklahoma*, 113 Fed.App. 854, 857 (10th Cir. 2004)). Even if the amount of leave that Bernard had remaining had some bearing on the issue, at the time that Bernard was terminated, she stated that she did not know when she was going to be permitted to return to work. An employer is not required to grant indefinite leave as a reasonable accommodation. *Rogers,* 87 F.3d at 760. For the foregoing reasons, Bernard has not been able to show that she was a "qualified individual" within the meaning of the ADA. Accordingly,

   **IT IS ORDERED** that defendant's motion for summary judgment [Doc. 16] on the plaintiff's "regarded as" claim under the ADA be and hereby is **GRANTED.**

### B. Termination without Reasonable Accommodation

Discrimination also includes the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). To prevail on a failure-to-accommodate claim, the plaintiff must prove: "(1) the plaintiff is a 'qualified individual with a disability'; (2) the disability with its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Neely,* 735 F.3d at 247 (quoting *Feist v. La. Dep't of Justice, Office of the Att'y Gen.,* 740 F.3d 450, 452 (5th Cir. 2013)). Failure of the plaintiff to request accommodation will preclude the plaintiff from

establishing a *prima facie* case of failure to accommodate under the ADA.  *Taylor v. Principal Fin. Grp. Inc.,* 93 F.3d 155, 163 (5th Cir. 1996).

Bernard admitted that she does not consider herself to be disabled,[32] so she has not established that she is a qualified individual *with a disability*.  Further, it is also uncontested that Bernard never asked for an accommodation.[33]  Because Bernard has shown neither that she is an individual with a disability nor that she requested an accommodation, she has failed to establish a *prima facie* case of failure to accommodate under the ADA.  Accordingly,

**IT IS ORDERED** that the defendant's Motion for Summary Judgment [Doc. 16] as to the plaintiff's reasonable accommodation claim under the ADA be and hereby is **GRANTED**.

### C.  Failure to Provide Notice of Rights under the ADA

Federal law requires every employer to post notices describing the provisions of the ADA.  42 U.S.C. § 12115.  These notices are to be posted in "conspicuous places."  42 U.S.C. § 2000e-10(a).  There is, however, no private cause of action to enforce the posting requirements.  *See, e.g., Hudson v. Loretex Corp.,* No. 95-CV-844 (RSP/RWS), 1997 WL 159292 *7 (Apr. 2, 1997); and *Park v. Fiserv Trust Co.,* No. 10-cv-00189-PAB-CBS, 2010 WL 5093796 *7 n. 3 (Sept. 30, 2010) (citing *Hudson,* 1997 WL 159292 *7; and *E.E.O.C. v. Sheet Metal Workers, Int'l Assn, Local No. 122,* 463 F.Supp. 388, 425 (D.Md. 1978)).  Accordingly,

**IT IS ORDERED** that the defendant's Motion for Summary Judgment [Doc. 16] as to the plaintiff's notice claim under the ADA be and hereby is **GRANTED**.

### III.    Family and Medical Leave Act

The FMLA entitles an eligible employee to take up to 12 work weeks of leave in a 12-month period when the employee has a serious health condition that makes her unable to perform the

---

[32] Pl.'s Resp. to Def.'s Uncontested Material Facts [Doc. 20-1], at 6.
[33] *Id.*

duties of her position. 29 U.S.C. § 2612(a)(1)(D). After a qualifying absence, the employer must restore the employee to the same position previously held by the employee before taking leave under the FMLA. *Haley v. Alliance Compressor LLC,* 391 F.3d 644, 649 (5th Cir. 2004) (citing 29 U.S.C. § 2614(a)(1); *Chaffin v. John H. Carter Co., Inc.,* 179 F.3d 316, 319 (5th Cir. 1999)). There are two types of claims under the FMLA: prescriptive and proscriptive. *Id.* Prescriptive claims are brought invoking entitlement or interference theories under § 2651(a)(1). *Id.* Proscriptive claims are brought for violations of the right not to be discriminated or retaliated against for exercising FMLA rights. *Id.* 29 U.S.C. § 2615(a)(1) makes it unlawful for "any employer to interfere with, restrain, or deny the existence of or the attempt to exercise any right provided under this chapter."

Bernard brings four factual bases for claims arising from the FMLA: (1) failure to inform Bernard of the availability of unpaid leave; (2) failure to inform Bernard of the amount of leave that Bernard had available; (3) failure to inform Bernard of the procedure to apply for available leave; and (4) termination of Bernard's employment contract while Bernard still had leave available.[34] In replying to the motion for summary judgment, Bernard explains that the first three allegations "place defendant on notice of it's [sic] exact conduct which unlawfully interfered with Ms. Bernard's exercise, [sic] of FMLA rights" and that the fourth allegation explains how EDS illegally denied the leave.[35] Bernard asserts that the case is an "interference and denial case pursuant to § 2615(a)(1)."[36]

---

[34] Compl. [Doc. 1] ¶ 17.
[35] Pl.'s Opp. to Def.'s Mot. for Summ. J. [Doc. 20], at 8.
[36] *Id.* Based on the complaint and the arguments for and against summary judgment, it appears that there is both a traditional interference claim alleged as well as a claim on the basis of failure to notify. Out of an abundance of caution, the court will address both potential claims.

## A. Interference Claim

For a claim of interference under the FMLA, an employee must "prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights." *Ragsdale v. Wolverine World Wide, Inc.* 535 U.S. 81, 89 (2002). The employee must also show that she was prejudiced by such violation. *Id.* To establish a *prima facie* interference case, a plaintiff must establish that: (1) she was an eligible employee, (2) the defendant was a covered employer under the FMLA, (3) that she was entitled to leave, (4) that she gave proper notice of her intention to take FMLA leave, and (5) the defendant denied her benefits to which she was entitled under the FMLA. *Lanier v. Univ. of Tex. Southwestern Med. Ctr.,* 527 Fed.Appx. 312, 316 (5th Cir. 2013) (per curiam). The first three elements are not in contention this case.

There are no magic words required of an employee to take leave under the FMLA. *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 763-764 (5th Cir. 1995) ("[T]he [FMLA] does not require an employee to invoke the language of the statute to gain its protection when notifying her employer of her need for leave for a serious health condition."). An employee needs only to provide her employer with enough information that would reasonably apprise the employer of the employee's request to take time off for a serious health condition. *Satterfield v. Wal-Mart Stores, Inc.,* 135 F.3d 973, 980-81 (5th Cir. 1998). Finally, an employer may have a duty to inquire further if statements made by the employee warrant it. *Lanier,* 527 Fed.Appx. at 316 (citing *Satterfield,* 135 F.3d at 980).

On October 19, 2012, after Bernard's doctors terminated her care, Bernard emailed a number of people at EDS, and the email was subsequently forwarded to Reverend Kay.[37] In the email, Bernard states that her "team is not allowing her to go back to work" and that she has been

---

[37] Email from Heather Bernard to Angela Doucet [Doc.20-5], at 22.

dismissed from the medical team's care.[38]  Bernard's coworker replies and asks if Bernard's care was discontinued because of the possibility that she needs to be in a hospital.[39]  Additionally, Bernard emailed the business manager at EDS to inquire about her pay options to decide what she needed to do next.[40]  This email was also forwarded to Reverend Kay.[41]  EDS was familiar with Bernard's medical condition and was also aware that discharge from treatment by her medical team would prevent Bernard from working.  The court finds these communications sufficient to create a genuine dispute as to a material fact as to whether Bernard provided adequate notice to EDS that she was planning to take qualifying leave under the FMLA.

The court also finds that Bernard was denied benefits under the FMLA.  The FMLA not only provides for 12 weeks of unpaid leave in a 12-month period but also ensures that an employee is reinstated to her former position at the end of that leave.  *Haley v. Alliance Compressor LLC,* 391 F.3d 644, 649 (5th Cir. 2004) (citing 29 U.S.C. § 2614(a)(1); *Chaffin v. John H. Carter Co., Inc.,* 179 F.3d 316, 319 (5th Cir. 1999)).  It is correct that when an employee receives more benefits under her employer's leave plan than she is entitled to under the law, there is no cause of action under the FMLA.  28 C.F.R. 825.700(a); *see also* 29 U.S.C. § 2653.

But Bernard did not receive more benefits under the school's plan.  Although she received the rest of the money she was entitled to under the leave plan, Bernard also had a right to reinstatement at the end of the FMLA leave.  Even assuming she had been granted leave instead of terminated, EDS does not dispute that Bernard had available FMLA leave time by the date it received the updated return-to-work release dated on November 28 2014.  Bernard was not offered her old position when she attempted to return to work; she was offered a position as a

---

[38] *Id.*
[39] *Id.*
[40] Email from Heather Bernard to Pam Spears [Doc. 20-5], at 23.
[41] *Id.*

substitute teacher.[42]   Therefore, the court is satisfied that there is a genuine dispute as to a material fact over whether EDS interfered with Bernard's rights under the FMLA.  Accordingly,

**IT IS ORDERED** that defendant's motion for summary judgment [Doc. 16] as to plaintiff's interference claim under the FMLA be and hereby is **DENIED**.

### B.  Claim for Failure to Notify

Recovery under the FMLA is appropriate when an employer's "noncompliance with the individualized notice regulations impaired [the plaintiff's] ability to exercise her rights under the FMLA and thereby caused her prejudice." *Downey v. Strain,* 510 F.3d 534, 542 (5th Cir. 2007). "If an employee has received her entitlements under the FMLA, she does not have an FMLA claim regardless of the quality of notice she received." *Hunt v. Rapides Healthcare System, Inc.,* 277 F.3d 757, 768 (5th Cir. 2001) (citations omitted).  "In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section." 29 C.F.R. § 825.208(a).  "Once the employer has acquired knowledge that the leave is being taken for an FMLA required reason, the employer must promptly . . . notify the employee that the paid leave is designated and will be counted as FMLA leave." *Id.* § 825.208(b)(1).   The notification must be "provided to the employee no less often than the first time in each six-month period that an employee gives notice of the need for FMLA leave." *Id.* § 825.301(c).

In *Downey v. Strain,* the defendant failed to notify the plaintiff of the amount of FMLA leave that she had remaining. *Downey,* 510 F.3d at 536.  As a result, the plaintiff took more time than allowed under the FMLA and was demoted upon her return to work in violation of the FMLA. *Id.* at 536.  If the plaintiff's FMLA leave had not been exhausted, the plaintiff would have been reinstated as a matter of right to her position upon her return to work. *Id.* at 541.  The court

---

[42] Pl.'s Ex. 3 Depo. of Heather Bernard [Doc. 20-4], at 56-58.

found that the plaintiff was prejudiced in not receiving individualized notice when the plaintiff asserted that had she received proper notice, she would have rescheduled her knee surgery so as to not exhaust her FMLA leave during that period. *Id.*

Bernard states that had she known she was entitled to 12 weeks of unpaid leave under the FMLA that she would have immediately requested additional leave on October 19, 2012.[43]  In her deposition, Bernard said that she was unaware of any "short-term medical leave available" prior to her termination on October 24, 2012.[44]  She also asserted that there were never any notices posted about the FMLA and that she had never "dealt with [the FMLA program]."[45]  Before being terminated, Bernard emailed the business manager at EDS to inquire about her pay options to determine what steps to take after receiving notice that the release to return work was being revoked.[46]  Reverend Kay states in her affidavit that there were FMLA notices posted throughout EDS but does not dispute that Bernard never received individualized notice of her time available under the FMLA.[47]

There is a genuine dispute as to whether Bernard was prejudiced by the school's failure to give notice of her rights under the FMLA.  Although she received the rest of her paid leave benefits, Bernard was also entitled to reinstatement at the termination of her leave.  Accordingly,

**IT IS ORDERED** that the defendant's motion to dismiss [Doc. 16] on the plaintiff's claim of failure to notify under the FMLA be and hereby is **DENIED**.

---

[43] Pl.'s Ex. 1 Aff. of Heather Bernard [Doc. 20-2], at 2.
[44] Def.'s Ex. A Oral Depo. of Heather Bernard [Doc. 16-2], at 66.
[45] Def.'s Ex. A Oral Depo. of Heather Bernard [Doc. 16-2], at 66.
[46] Def.'s Ex. A Email from Heather Bernard to Pam Spears [Doc. 16-2], at 96.
[47] Def.'s Supplemental Aff. [Doc. 23-1].

## IV.   Breach of Employment Contract

In her complaint, Bernard alleges that EDS breached the "Teacher's Employment Contract" because the reasons for terminating Bernard did not constitute "just cause."[48]  In its motion for summary judgment, EDS asserts that there was just cause because the employment contract gave the Head of School "sole discretion to determine whether a teacher's continued employment comports with the school's mission and whether any condition impairs the teacher's continued usefulness to the school."[49]

The interpretation of a contract is a matter of law when the contract can be interpreted from the four corners of the instrument without the necessity of extrinsic evidence. *Corbello v. Iowa Prod.,* 850 So.2d 686, 693 (La. 2003) (citing *Brown v. Drillers,* 630 So.2d 741 (La. 1994)). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation need be made into the parties' intent. La. Civ. Code art. 2046.  Parties are free to contract for any object that is lawful, possible, and determined or determinable.  La. Civ. Code art. 1971.

Bernard's employment contract with EDS states that "[t]he Head, with the concurrence of the Rector, may discharge the Teacher during the term of this Agreement for just cause."[50]  "Just cause" included, but was not limited to, "[a]ny . . . condition which materially impairs the continued usefulness or ability of the Teacher to perform the services required hereunder, as

---

[48] Compl. [Doc. 1] ¶¶ 18-21.  In her opposition to the motion for summary judgment, Bernard also makes the allegation that it was breach of contract to terminate her without giving her all of the long-term leave that she was supposedly entitled to under contract.  Pl.'s Opp. to Def's Mot. for Summ. J. [Doc. 20], at 12-14.  However, the employment contract specifically limits a teacher's entitlement if discharged to the "percentage of the total annual compensation set forth above that the actual service rendered by the Teacher bears to the total service required under this Agreement, less any liquidated damages and attorneys' fees and costs."  Pl.'s Ex. 4 Bishop Noland Episcopal Day School Teacher's Employment Contract [Doc. 20-6] ¶ 7.

[49] Def.'s Mot. for Summ. J. [Doc. 16], at 1.

[50] Pl.'s Ex. 4 Bishop Noland Episcopal Day School Teacher's Employment Contract [Doc. 20-6] ¶ 7.

determined by the Head in her sole discretion."[51]  The court interprets this provision to mean that Revered Kay had sole discretion to determine whether Bernard had a condition that materially impaired her continued usefulness or ability to perform required services.

Reverend Kay explains in her affidavit that she terminated Bernard "in accordance with the sole discretion afforded by the employment contract."[52]  The termination letter from Reverend Kay states that Bernard was terminated "in accordance with Section 6 of [her] Contract."[53]  The letter goes on to explain that it was the view of Reverend Kay that Bernard was no longer able to "model good health" nor possessed the requisite "energy and strength."[54]  The termination letter also iterates that Reverend Kay did not believe that Bernard was capable of performing "in accordance with the Characteristics of Professional Excellence expected of all EDS faculty."[55]

Although her medical authorization to return to work was revoked, Bernard asserts that she was physical and mentally capable of performing the duties of her job.[56]  This is not enough to raise a genuine dispute as to a material fact over whether Reverend Kay used her sole discretion to determine that Bernard had a condition that materially impaired the ability to do her job.[57]  Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment [Doc. 16] on the plaintiff's claims for breach of contract be and hereby is **GRANTED**.

---

[51] Pl.'s Ex. 4 Bishop Noland Episcopal Day School Teacher's Employment Contract [Doc. 20-6] ¶ 7.
[52] Dec. of Reverend Frances "Boo" Kay [Doc. 16-2] ¶ 24.
[53] Termination Letter [Doc. 16-2], at 98.
[54] *Id.*
[55] *Id.*
[56] Pl.'s Ex. 3 Dep. of Heather Bernard [Doc. 20-4], at 37-38.
[57] The court notes that "condition" as used in the employment contract does not just encompass "physical or mental incapacity" but also includes states of "incompetence," "immorality," "intemperance," and "insubordination." Pl.'s Ex. 4 Bishop Noland Episcopal Day School Teacher's Employment Contract [Doc. 20-6] ¶ 7 (preceding "and/or [a]ny other condition" with the aforementioned states).

## CONCLUSION

**IT IS ORDERED** that the defendant's Motion for Summary Judgment [Doc. 16] as to the plaintiff's "regarded as" claim under the ADA be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendant's Motion for Summary Judgment [Doc. 16] as to the plaintiff's reasonable accommodation claim under the ADA be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendant's Motion for Summary Judgment [Doc. 16] as to the plaintiff's notice claim under the ADA be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendant's Motion for Summary Judgment [Doc. 16] as to the plaintiff's interference claim under the FMLA be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss [Doc. 16] on the plaintiff's claim of failure to notify under the FMLA be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment [Doc. 16] on the plaintiff's claim for breach of contract be and hereby is **GRANTED**.

Lake Charles, Louisiana, this 16 day of October, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

17