RECEIVED
IN LAKE CHARLES, LA.

JAN 20 2015

TONY R. MOORE, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| HEATHER BERNARD, | * | CIVIL ACTION NO. 2:13-cv-3284 |
| Plaintiff, | * | JUDGE MINALDI |
| v. | * | |
| BISHOP NOLAND EPISCOPAL DAY SCHOOL, | * | MAGISTRATE JUDGE KAY |
| Defendant. | * | |

*************************************************************************

## OPINION

The plaintiff, Heather Bernard ("Bernard"), brought this lawsuit against her former employer, Bishop Noland Episcopal Day School ("EDS"), under the Family and Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), and Louisiana law. She alleged that EDS interfered with her rights under the FMLA and failed to provide adequate notice under the FMLA.[1]  She also brought claims that EDS discriminated against her under the ADA, failed to make reasonable accommodations under the ADA, and breached her employment contract in violation of Louisiana law.[2]  All claims except for those arising under the FMLA were dismissed in a separate ruling before trial after EDS moved for summary judgment.[3]

This court presided over a bench trial commencing on November 17, 2014. Both Bernard and EDS have filed post-trial briefs [Docs. 36 & 35, respectively].  Having

---

[1] Compl. ¶¶

[2] Compl. ¶¶

[3] *See* Order [Doc. 30].

carefully considered the evidence presented at trial and the arguments of the parties, the court hereby enters the following findings of fact and conclusions of law.  To the extent that any finding of fact constitutes a conclusion of law, the court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the court hereby adopts it as such.

## FINDINGS OF FACT

During the 2011-2012 academic year, Bernard was a lead teacher in the program for three-year-old children at EDS.  In July of 2012—before the 2012-2013 academic year began—Bernard emailed the vice principal of EDS to ask about sick leave, so she could receive medical attention for her eating disorder.[4]  The vice principal informed Bernard that she had 16.75 sick days to begin the year, followed by one month of full pay for September, then one month of one-half pay for October, and finally, one month of one-third pay for November.[5]  Although the school handbook also provides information on the amount of long-term leave available for teachers, Bernard testified that she received no individualized notice of her rights under the FMLA.[6]

When school started in August of 2012, Bernard was not ready to return to work and took advantage of the long-term leave program offered by EDS.  Then, on October 8, 2012, she returned to work.  No one at EDS requested that Bernard return to work at that

---

[4] Joint Ex. 6. Bernard suffers from Anorexia Nervosa, an eating disorder characterized by an individual's overemphasis on body image and abnormally low weight. *See* Att. B, Post-Trial Brief on Behalf of Pl. [Doc. 36-2], at 1.

[5] Joint Ex. 8.

[6] Reverend Kay testified that a generalized FMLA notice is posted at EDS; Bernard testified that she could not recall seeing such a notice.  The court finds that Reverend Kay is more credible on this issue.  However, claims stemming from a failure to provide inadequate notice are concerned with *individualized* notice and not the general posting requirements.

time; it was Bernard's decision to return to EDS.  Bernard's return to work was conditioned on (1) continuing to receive regular treatment from all members of her medical team, (2) continuing to make progress with her eating disorder, and (3) continuing to have lab and blood work monitored.

Bernard's return to work was unsuccessful.  The school's principal, Reverend Kay, testified that she received complaints that Bernard was not engaging with the class and instead spending her time writing thank-you cards.  During nap time, Reverend Kay observed Bernard working on those cards instead of prepping for an upcoming lesson.  Additionally, Bernard, who possessed considerable teaching experience, was unable to follow a teaching plan left for her when the other lead teacher was out of the classroom.  After her return, Bernard was never able to manage the classroom on her own and even failed to learn the names of the children in her class.

In contrast, Bernard testified that she never wrote thank-you cards during the time that she should have been working on other tasks.  She also testified that she was in no way unprepared to return to school on October 8, 2012.  The court finds that the testimony of Reverend Kay is credible on this issue and that Bernard was unable to resume performing her duties satisfactorily.

On October 9, 2012—the day after Bernard returned to work—she met with her nutritionist, who indicated that Bernard was not meeting expectations in terms of making progress with her eating disorder.[7]  Reverend Kay was given a copy of the rubric that Bernard's nutritionist used for evaluation.  On Friday, October 19, 2012, Bernard was

---

[7] Joint Ex. 14.

3

informed that her medical team was discontinuing treatment because she continued to lose weight, and this was also indicated on a rubric.

On the Friday that Bernard was told that her team was discontinuing treatment, she drove to EDS, where she was met by her mother. While at EDS, Bernard spoke with the vice principal, and she was advised to go home for the day. When she returned home, Bernard emailed another teacher to let her know that she was not sure when she would be back at EDS because her doctors had discontinued her care.[8] The email was subsequently forwarded to Reverend Kay on October 23, 2012.[9] Bernard also emailed the business manager at EDS on October 21, 2012, to inquire about her pay options.[10] This email was forwarded to Reverend Kay the same day.[11]

Bernard did not return to work on Monday, October 22nd, or Tuesday, October 23rd. She did not fill out any absence reports, nor did she call or email Reverend Kay or the vice principal to notify them of her absence. The EDS handbook provides that in the event of absence, employees are to fill out absence reports and call the Division Coordinator and/or Assistant Head of School.[12] The decision to terminate Bernard was made on October 22nd, and Bernard was officially terminated via a letter dated October 24, 2012.[13]

## CONCLUSIONS OF LAW

### I.    Jurisdiction

---

[8] Joint Ex. 17.
[9] *Id.*
[10] Joint. Ex. 16.
[11] *Id.*
[12] Joint Ex. 21, at 43.
[13] Joint Ex. 18.

Bernard's claims arise under the Family and Medical Leave Act of 1993. This court therefore has federal jurisdiction pursuant to 28 U.S.C. § 1331.

## II.   FMLA Claims

Bernard offers two theories for a violation of her rights under the FMLA: (1) that EDS unlawfully interfered with her rights when it terminated her after she provided notice of her intent to take leave; and (2) that she was injured by the failure of EDS to provide individualized notice of her rights under the FMLA. The FMLA entitles an eligible employee to take up to 12 work weeks of leave in a 12-month period when the employee has a serious health condition that makes her unable to perform the duties of her position. 29 U.S.C. § 2612(a)(1)(D). After a qualifying absence, the employer must restore the employee to the same position previously held by the employee before taking leave under the FMLA. *Haley v. Alliance Compressor LLC,* 391 F.3d 644, 649 (5th Cir. 2004) (citing 29 U.S.C. § 2614(a)(1); *Chaffin v. John H. Carter Co., Inc.,* 179 F.3d 316, 319 (5th Cir. 1999)). 29 U.S.C. § 2615(a)(1) makes it unlawful for "any employer to interfere with, restrain, or deny the existence of or the attempt to exercise any right provided under this chapter."

### a.  Interference

The court finds that EDS did not interfere with Bernard's rights. For a claim of interference under the FMLA, an employee must "prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights." *Ragsdale v. Wolverine World Wide, Inc.* 535 U.S. 81, 89 (2002). The employee must also show that she was prejudiced by such violation. *Id.* However, if an

employer can show that the employee would have been terminated regardless of her request for leave, the employee's interference claim will not prevail.  *Meinelt v. P.F. Chang's China Bistro, Inc.,* 787 F.Supp.2d 643, 654 (S.D. Tex. 2011) (collecting cases).

To establish a *prima facie* interference case, a plaintiff must establish that: (1) she was an eligible employee, (2) the defendant was a covered employer under the FMLA, (3) that she was entitled to leave, (4) that she gave proper notice of her intention to take FMLA leave, and (5) the defendant denied her benefits to which she was entitled to under the FMLA. *Lanier v. Univ. of Tex. Southwestern Med. Ctr.,* 527 Fed.Appx. 312, 316 (5th Cir. 2013) (per curiam).  To determine whether proper notice was given, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Willis v. Coca Cola Enters., Inc.,* 445 F.3d 413, 417 (quoting *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 764 (5th Cir. 1995)).  Also, an employer may have a duty to inquire further if statements made by the employee warrant it.  *Lanier v. Univ. of Tex. Southwestern Med. Ctr.,* 527 Fed.Appx. 312, 316 (5th Cir. 2013) (per curiam) (citing *Satterfield v. Wal-Mart Stores, Inc.,* 135 F.3d 973, 980 (5th Cir. 1998)); *see also* 29 C.F.R. § 825.302 (c) ("In all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA is being sought by the employee, and obtain the necessary details of the leave to be taken.").

The threshold for providing proper notice that an employee intends to take FMLA leave is low. *See Miles-Hickman v. David Powers Homes, Inc.,* 589 F.Supp.2d 840, 874 (S.D. Tex. 2008) (holding that providing notice to a coworker who then informed the

Human Resources Director of the employee's need for emergency medical procedures was adequate notice under the FMLA); and *Meinelt*, 787 F.Supp.2d at 654-55 (holding that verbal notice to an operating partner of a restaurant that immediate medical leave was necessary for an uncertain duration was adequate notice); *but see Wilson v. Noble Drilling Servs., Inc.*, 405 Fed.Appx. 909, 913 (5th Cir. 2010) (holding that verbal notice to supervisor that employee "might" need to take leave and "possibility" that leave would need to be taken was insufficient) (quotations in original); and *Crown v. Nissan North American, Inc.*, 634 F.Supp.2d 688, 693 (S.D. Miss. 2009) ("The FMLA does not require an employer to be clairvoyant.") (citation omitted).

Bernard's actions do not constitute notice under the FMLA. She informed the vice principal that her medical team was discontinuing treatment and asked the business manager about her options moving forward. However, Bernard never notified the school of her need for leave. Although Bernard emailed another teacher on October 19, 2012, to explain that her medical team was discontinuing treatment and that they were not allowing her to go back to work, this email was not forwarded to Reverend Kay until October 23, 2012—the day after the decision was made to terminate Bernard. Additionally, after the medical team informed Bernard that she was no longer going to be treated, Bernard asked EDS if they would be willing to weigh and monitor her, so she could continue to meet the conditions placed upon her return to work. This request indicated to EDS that Bernard was still trying to go to work, or at the very least, concoct a plan so that additional leave would not be necessary.

Furthermore, even if Bernard gave sufficient notice under the FMLA, her cause of action for interference would still fail because EDS showed that it would have terminated her regardless of a request for leave.  The EDS handbook lists the "Characteristics of Professional Excellence" that it expects its teachers to exemplify, and Bernard was failing in more than one area.  The characteristics that Bernard was lacking at the time of her return were identified by Reverend Kat at trial: (1) consistency and reliability, (2) authentic assessment, (3) enthusiasm, (4) emotional engagement, (5) commitment to colleagues, and (6) leadership.  Before failing to report for work on October 22nd and October 23rd, Bernard was already performing her teaching duties unsatisfactorily.  Her lack of enthusiasm and emotional engagement were shown through her actions in the classroom.  Bernard did not learn her students' names, never led an instance of circle time—the equivalent of a lesson plan used with older students, and spent her time working on other activities instead of her students and her job as teacher.

Bernard similarly failed in her commitment to her colleagues and her leadership. Bernard's classroom had two lead teachers in it; there is typically only one lead teacher per classroom, but EDS was trying to assist Bernard into transitioning back to work. On a day that the other lead teacher fell ill, a substitute teacher filled in but had to go outside the classroom for help when Bernard could not lead the lesson plan. Without learning her students' names or leading the classroom, it would have impossible for Bernard to fulfill the characteristic of authentic assessment.

8

Finally, Bernard failed to give notice when she was absent. The EDS handbook clearly prescribes the method that a teacher should use to notify EDS when she is absent. At the time of Bernard's termination, she was neither consistent nor reliable. EDS had a number of valid reasons for terminating Bernard, and as such, she cannot succeed on her interference claim.

### b. Failure to Notify

Recovery under the FMLA is appropriate when an employer's "noncompliance with the individualized notice regulations impaired [the plaintiff's] ability to exercise her rights under the FMLA and thereby caused her prejudice." *Downey v. Strain,* 510 F.3d 534, 542 (5th Cir. 2007). "If an employee has received her entitlements under the FMLA, she does not have an FMLA claim regardless of the quality of notice she received." *Hunt v. Rapides Healthcare System, Inc.,* 277 F.3d 757, 768 (5th Cir. 2001) (citations omitted). "In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section." 29 C.F.R. § 825.208(a). "Once the employer has acquired knowledge that the leave is being taken for an FMLA required reason, the employer must promptly . . . notify the employee that the paid leave is designated and will be counted as FMLA leave." *Id.* § 825.208(b)(1). The notification must be "provided to the employee no less often than the first time in each six-month period that an employee gives notice of the need for FMLA leave." *Id.* § 825.301(c).

In *Downey v. Strain,* the defendant failed to notify the plaintiff of the amount of FMLA leave that she had remaining. *Downey,* 510 F.3d at 536. As a result, the plaintiff took more time than allowed under the FMLA and was demoted upon her return to work in violation of the FMLA. *Id.* at 536. If the plaintiff's FMLA leave had not been exhausted, the plaintiff would have been reinstated as a matter of right to her position upon her return to work. *Id.* at 541. The court found that the plaintiff was prejudiced in not receiving individualized notice when the plaintiff asserted that had she received proper notice, she would have rescheduled her knee surgery so as not to exhaust her FMLA leave during that period. *Id.*

EDS did not counter Bernard's statement that she did not receive individualized notice of her rights under the FMLA. However, Bernard received notice of the long-term leave available to her in the school's handbook as well as in an email. She also testified that she was aware of the leave policy at EDS and that she had leave time remaining. Unlike the plaintiff in *Downey,* who was injured by a lack of individualized notice, Bernard has not shown how a lack of individualized notice caused her injury. Although Bernard did not receive individualized notice of her rights under the FMLA, she was aware that she had long-term leave available to her.

Bernard testified that had she been aware of available FMLA leave, she would have requested the leave as soon as she knew it was needed. However, this statement cannot be logically resolved with the fact that Bernard knew that she had long-term leave available. Although Bernard did not know what *type* of leave was available, she was

aware that she was entitled to leave.  Her testimony that she would have taken different action had she been informed that the leave available was FMLA leave is not credible.

## CONCLUSION

Based upon the above and the foregoing, the court finds in favor of the defendant, Bishop Noland Episcopal Day School, and against the plaintiff, Heather Bernard.

Lake Charles, Louisiana, this _____ day of _____ 15 _____ 2015

_____
PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE